IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

OLIMPIA ARRIOLA, *et al.*,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　)　　Civil Action No. 1:14cv0745 (JFA)
　　　　　　　　　　　　　　　　　　　)
RODRIGO PARDO, *et al.*,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　)
_____)

## MEMORANDUM OPINION

This matter is before the court on plaintiffs' motion for entry of default judgment against defendants Rodrigo Pardo and Lorena Medina (Docket no. 76) ("motion for default judgment").[1] Plaintiffs filed their initial complaint in this action on June 18, 2014 (Docket no. 1) and filed an amended complaint on August 26, 2014 (Docket no. 12). Plaintiffs' amended complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679 *et seq.*, and Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-196 and asserts claims of fraud, negligence, tortious interference with contract, breach of contract, and breach of the implied covenant of good faith and fair dealing. The amended complaint included four defendants: Champions Mortgage, Inc. ("Champions"); Fairfax Realty, Inc. ("Fairfax"); Lorena Medina ("Medina"); and Rodrigo Pardo ("Pardo"). The claims against Fairfax and Champions have been dismissed. (Docket nos. 57, 75). The Clerk of Court has entered a default with respect to Pardo and Medina (Docket no. 36) and plaintiffs' motion for default judgment is now ripe for adjudication.

---

[1] This matter was referred to the undersigned magistrate judge on February 27, 2015 pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Docket no. 74).

# I. FACTUAL BACKGROUND

This action arises out of a fraudulent mortgage modification scheme.[2] Through intentional omissions and misrepresentations regarding the status of the agreed modification, defendants caused substantial financial harm that eventually culminated in a foreclosure proceeding in May 2013. (Compl. ¶ 39). Damages alleged in the amended complaint include: "loss of their home, the loss of monies converted by Ms. Medina and Mr. Pardo, credit damage, emotional distress, embarrassment, humiliation, and the costs and expenses incurred in moving into a new place to live." (Compl. ¶ 46).

Plaintiffs became involved in this scheme after purchasing a private residence in Sterling, Virginia. (Compl. ¶ 13). Despite remaining current on their mortgage payments for several years, "Plaintiffs were still interested in potentially obtaining a modification because of the effect of the economic recession on Plaintiffs' monthly income." (Compl. ¶ 16). In April 2012, plaintiffs' real estate agent arranged a meeting with Medina at plaintiffs' residence in Sterling, Virginia. (Compl. ¶ 17). Medina then arranged a second meeting in May 2012, where she was accompanied by Pardo. (Compl. ¶ 18). During that meeting, "Mr. Pardo informed the Plaintiffs that he was a real estate agent with Fairfax Realty, and encouraged the Plaintiffs to allow him, Ms. Medina, and Fairfax Realty to assist in obtaining the loan modification." (*Id.*). Plaintiffs signed an authorization letter which provided: "Olimpia and Jeffrey Arriola, henceforth have authorized Fairfax Realty, Inc., to act on my behalf [*sic*] obtained information on my mortgage . . . Fairfax Realty, Inc., (Broker), Rodrigo Pardo, Real Estate agent and Lorena Medina Assistant is/are assisting me with a loan modification, or reduce the monthly payments." (Compl. ¶ 23).

---

[2] The amended complaint provides, in part: "In its simplest form, this is an action brought against Fairfax Realty, Inc., after two of its employees/agents, Defendants Rodrigo Pardo and Lorena Medina, fraudulently represented to the Plaintiffs that they would assist them in obtaining a mortgage modification." (Docket no. 12 at ¶ 1). Unless otherwise indicated, citations to "Compl." refer to the amended complaint filed on August 26, 2014.

Following execution of the authorization letter, plaintiffs were told that they would be unable to obtain the desired modification with Mr. Arriola's current credit score. (Compl. ¶ 24). Defendants then misrepresented that they could improve Mr. Arriola's credit score upon receipt of a $500 payment. (*Id.*). Despite receiving two payments from Ms. Arriola, neither defendant performed any credit repair services or attempted to improve Mr. Arriola's credit score as promised. (Compl. ¶¶ 25–27). Defendants also misrepresented that in order to qualify for a mortgage modification, plaintiffs would need to "miss" a mortgage payment under their current payment plan. (Compl. ¶ 28). Plaintiffs relied on this misrepresentation and withheld the required payment for July 2012. (Compl. ¶¶ 28, 29). Plaintiffs also provided defendants with copies of their bank statements and pay stubs, with the understanding that defendants were forwarding this financial information to the loan servicing company as part of the application process. (Compl. ¶ 30).

On September 1, 2012, Ms. Arriola was asked to provide defendants with her debit card number. (Compl. ¶ 32). Plaintiffs were told that access to Ms. Arriola's account would allow defendants to forward the monthly payments directly and "ensure that the modification process ran smoothly." (*Id.*). Beginning in September 2012 and continuing through May 2013, defendants withdrew $2,141.95 each month from Ms. Arriola's bank account under the guise of forwarding the required payments to plaintiffs' loan servicing company. (Compl. ¶¶ 34, 35). However, instead of forwarding these payments, defendants converted the money for their own personal use while assuring plaintiffs their loan modification continued to proceed as planned. (Compl. ¶¶ 37, 41). On May 22, 2013, plaintiffs received notice that North Star Properties, LLC had purchased their residence at a foreclosure sale on May 15, 2013. (Compl. ¶¶ 39, 40). Plaintiffs provided defendants with a copy of the foreclosure letter and demanded the return of

3

funds withdrawn from Ms. Arriola's bank account. (Compl. ¶¶ 43–44). After defendants failed

to convince plaintiffs to re-submit another loan modification application, Medina retrieved and

returned some of the financial documents provided by plaintiffs but otherwise refused to refund

the payments. (Compl. ¶ 45).

## II. PROCEDURAL BACKGROUND[3]

Medina was served personally with a summons and copy of the complaint on July 2,

2014 and the amended complaint was sent to Medina by first-class mail on August 26, 2014.

(Docket nos. 4, 12). On July 21, 2014, counsel for the plaintiffs received a facsimile

communication from Medina entitled "RE: Civil Action No: 1:14CV745." (Docket no. 31-1).

In response, plaintiffs filed a motion to strike, requesting the court "to strike the Answer of

Defendant Lorena Medina ("Ms. Medina") and to order Ms. Medina to file a more definite

statement and comply with Local Rule 7(B)." (Docket no. 30). While Medina's "answer"

accompanied plaintiffs' memorandum in support as an attachment, no answer or other responsive

pleading was filed with the court. On November 7, 2014, the court denied plaintiffs' motion,

reasoning that "Ms. Medina's answer . . . cannot be stricken as there is nothing to strike."

(Docket no. 33). The affidavit accompanying plaintiffs' request for entry of default states, in

part: "Defendant Lorena Medina ("Ms. Medina") was personally served by The Marston

Agency, Inc. on July 2, 2014. . . . On August 26, 2014, Plaintiff mailed a copy of the Amended

Complaint to Ms. Medina via certified mail. Ms. Medina has yet to file an answer or responsive

pleading to the Amended Complaint. The Amended Complaint added two alternative claims

against Ms. Medina . . . but it did not substantively change the allegations of the original

Complaint." (Docket no. 34-1).

---

[3] Discussion of the procedural background is limited to the remaining defendants involved in this motion for default judgment.

A summons was issued for Pardo on June 20, 2014 and the plaintiffs attempted to serve him at his last known address. (Docket no. 2). The initial summons was returned "unexecuted" and filed with the court on September 15, 2014. (Docket no. 18). Plaintiffs then attempted service of the amended complaint at a revised address, which was identical to the address listed on the summons for Lorena Medina. (Docket no. 19). The revised address was included on a "Affidavit for Service of Process on the Secretary of the Commonwealth" filed on October 1, 2014, indicating counsel's inability to locate Pardo and requesting service on the Secretary of the Commonwealth. (Docket no. 29); *See* Va. Code Ann. § 8.01-329. The accompanying "Certificate of Compliance" indicates service on the Secretary of the Commonwealth on October 6, 2014, who then forwarded the applicable filings to the designated party by certified mail on October 17, 2014. (Docket no. 29). The affidavit accompanying plaintiffs' request for entry of default states, in part: "Defendant Rodrigo Pardo ("Mr. Pardo") was served with the Amended Complaint through the Secretary of the Commonwealth on October 20, 2014. Mr. Pardo was required to file his answer or responsive pleading on or before November 10, 2014. . . . As of November 11, 2014, Mr. Pardo has not filed an answer or responsive pleading, nor contacted counsel for an extension to file the same." (Docket no. 35-1).

The Clerk of Court entered a default with respect to Pardo and Medina on November 13, 2014. (Docket no. 36). Plaintiffs filed and served their motion for default judgment on May 1, 2015 and noticed their motion for a hearing on May 8, 2015. (Docket nos. 76, 78). On May 8, 2015, plaintiffs and their counsel appeared before the undersigned and no one appeared on behalf of Pardo or Medina. As requested by the court, plaintiffs have filed an affidavit of compliance with the Service Members Civil Relief Act indicating that based on their investigation, neither Pardo nor Medina are active members of any U.S. military branch. (Docket no. 81).

### III. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on the failure of both defendants to file responsive pleadings in a timely manner, the Clerk of the Court has entered a default against Pardo and Medina. (Docket no. 36).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). As for damages, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). However, when the claims raised or damages sought are otherwise unclear, Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006).

### IV. JURISDICTION AND VENUE

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. Plaintiffs allege that subject matter jurisdiction is

6

conferred by the FCRA, CROA, and 28 U.S.C. § 1331. (Compl. ¶ 4). This court also has supplemental jurisdiction over the alleged state law claims pursuant to 28 U.S.C. § 1367. (Compl. ¶ 5).

This court has personal jurisdiction over the defendants because Virginia's long-arm statute authorizes the exercise of jurisdiction and both defendants satisfy the "minimum contacts" test under the Due Process Clause of the Fourteenth Amendment. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Specifically, Pardo worked as a real estate agent in Fairfax's Annandale office and transacted business within the Commonwealth of Virginia. (Compl. ¶¶ 11, 20). Medina also worked for Fairfax and transacted business within the Commonwealth of Virginia. (Compl. ¶ 12, 30). Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Virginia. (Compl. ¶ 5). Plaintiffs reside in this district and the property that was the subject of defendants' scheme is also located in this district. (Compl. ¶ 13).

## V. ANALYSIS

Accompanying plaintiffs' memorandum in support of motion for entry of default judgment is an attachment entitled "Plaintiffs' Proposed Finding of Fact and Conclusions of Law," which requests $250,000.00 in actual damages and $250,000.00 in punitive damages for each plaintiff. (Docket no. 77-1). On May 8, 2015, plaintiffs also filed and served a motion for attorney's fees and costs along with a supporting memorandum. (Docket nos. 82, 83). While Federal Rule of Civil Procedure 8(b)(6) directs the court to accept plaintiffs' factual averments as true, the court is not bound to accept plaintiffs' representations relating to the calculation and assessment of damages. *See Ryan v. Homecoming Fin. Network*, 253 F.3d 778, 780 (4th Cir.

7

2001). Even though plaintiffs are entitled to an award of damages under various legal theories, as a practical matter, plaintiffs may recover only once for the damages they have sustained. As discussed with plaintiffs' counsel during the hearing on May 8, 2015, the court will focus on two of the counts contained in the amended complaint that will provide the basis for a judgment for all the damages that the court finds appropriate to award in this case. These are Count Two under the CROA and Count Three asserting a claim of fraud under Virginia law. As discussed below, these two claims will provide the basis for the recovery of all of plaintiffs' compensatory damages, punitive damages, and attorney's fees and costs.[4]

A. *Credit Repair Organizations Act*

The CROA is a federal statute that functions as a subset of the Consumer Credit Protection Act and is designed to promote transparency in consumer credit transactions. The CROA is designed to regulate individuals and/or entities that function as a "credit repair organization." That term, as defined under the CROA

> means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of-- (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i);

15 U.S.C. § 1679a(3)(A). There are several "prohibited practices" that can render a credit repair organization liable under the CROA, three of which are applicable to the allegations before this court. The first is found under section 1679b(a)(4), which prohibits a credit repair organization from "engag[ing] directly or indirectly, in any act, practice, or course of business that constitutes

---

[4] As explained more fully below, the court elects to award plaintiffs their costs and attorney's fees in this matter under the CROA, as that recovery is specifically authorized by statute. *See* 15 U.S.C. § 1679g(a)(3). While courts sitting in the Commonwealth of Virginia have recognized a "fraud exception" to the general rule against awarding attorney's fees unless authorized by statute or contract, this court has reasoned that "this exception, like all exceptions to the rule against awarding attorneys' fees unless authorized by statute or contract, should be interpreted narrowly." *C.F. Trust, Inc. v. First Flight Ltd. Partnership*, 359 F. Supp. 2d 497, 503 (E.D. Va. 2005).

or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(4). The second prohibits a credit repair organization from "charg[ing] or receiv[ing] any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b(b). Lastly, the CROA requires credit repair organizations to provide customers with a written disclosure statement that sets forth the customer's rights prior to entering into a contract for the provision of credit repair services. *See* 15 U.S.C. § 1679c(a).

Based on the facts alleged, defendants may be considered a "credit repair organization" as that term is defined under 15 U.S.C. § 1679a(3)(A) and are liable for damages resulting from: (1) misrepresentations concerning the defendants' ability to improve Mr. Arriola's credit score; (2) the receipt of two payments from Ms. Arriola before credit repair services were fully performed; and (3) failure to provide plaintiffs with the required written disclosure under 15 U.S.C. § 1679c(a) before entering into an agreement for the provision of credit repair services (Compl. ¶¶ 24–26). Individuals injured by these violations are permitted to recover both actual and punitive damages under the CROA. *See* 15 U.S.C. § 1679g(a).

With respect to actual damages, any person who fails to comply with the above-mentioned provisions of the CROA shall be liable to the aggrieved party for either "(A) the amount of any actual damage sustained by such person as a result of such failure; or (B) any amount paid by the person to the credit repair organization," whichever is greater. 15 U.S.C. § 1679g(a)(1). The CROA also provides for an award of punitive damages in the court's discretion: "In the case of any action by an individual, such additional amount as the court may allow." 15 U.S.C. § 1679(a)(2)(A). However, the court must consider the following factors

when awarding punitive damages under the CROA: "(1) the frequency and persistence of noncompliance by the credit repair organization; (2) the nature of the noncompliance; (3) the extent to which such noncompliance was intentional; and (4) in the case of any class action, the number of consumers adversely affected." 15 U.S.C. § 1679g(b). Lastly, a plaintiff that prevails under 15 U.S.C. § 1679g(a)(1) or (2) may recover "the costs of the action, together with reasonable attorneys' fees." 15 U.S.C. § 1679g(a)(3).

Based on the foregoing, defendants have violated the CROA and are liable to plaintiffs for the damages they have sustained under 15 U.S.C. § 1679g(a)(1) as well as punitive damages under 15 U.S.C. § 1679g(a)(2). As stated in the amended complaint, "Ms. Arriola gave Mr. Pardo a check in the amount of $250.00 so that Defendants would be able to fix Mr. Arriola's credit score and get the modification. Approximately one month later, Ms. Arriola gave Ms. Medina a second $250 money order." (Compl. ¶ 25). No credit repair services were performed by the defendants and misrepresentations were made to the plaintiffs concerning the status of the credit repair services. Defendants also failed to provide the plaintiffs with a written disclosure statement stating their rights. These violations were willful and done with the clear intent to deceive the plaintiffs and obtain money from them under false pretenses. In addition to the $500.00 paid to the defendants for non-existent credit repair services, plaintiffs claim they suffered credit damage, damage to reputation, embarrassment, humiliation, and other emotional and mental distress. (Compl. ¶ 61).

Misrepresentations were made to both plaintiffs with respect to the available credit repair services, and the court finds that both plaintiffs suffered damages as a result of these violations. Under 15 U.S.C. § 1679g(a)(1)(B), Ms. Arriola is entitled to recover the $500.00 paid to the defendants *or* the amount of any actual damages resulting from the defendants' failure to fully

10

perform the credit repair services prior to payment. The court also finds that an award of punitive damages is appropriate under the circumstances. In considering the factors listed under 15 U.S.C. § 1679g(b), the court finds the nature of defendants' noncompliance in the context of the overarching mortgage modification scheme to be particularly egregious and that noncompliance was intentional based on the allegations set forth in the amended complaint. As a result, plaintiffs are entitled to punitive damages under 15 U.S.C. § 1679g(a)(2).

The CROA also provides for the award of costs and attorney's fees to the prevailing plaintiff. *See* 15 U.S.C. § 1679g(a)(3); *see also Stith v. Thorne*, 488 F. Supp. 2d 534, 542 (E.D. Va. 2007). In this case, plaintiffs have requested an award of attorney's fees and costs in the total amount of $11,387.89. (Docket no. 82). In support of this request they have provided a memorandum and affidavit from Kristi Kelly, counsel for the plaintiffs. (Docket no. 83). The court has reviewed the memorandum and affidavit and finds that the total amount of fees requested ($10,627.50) is reasonable. The hourly rates charges by Ms. Kelly ($375.00), Mr. Guzzo ($300.00), and Ms. Balaram ($175.00) are reasonable and consistent with hourly rates charged in the Northern Virginia area for lawyers and paralegals with the same level of skill and experience. In addition, the total number of hours billed for drafting the complaint, locating and serving these defendants, moving to strike Medina's original answer, obtaining a default, and filing the motion for default judgment (33.7 hours) is reasonable and appropriate. Finally, the $760.39 in costs incurred for filing the complaint, serving the complaint, and delivery expenses are reasonable.

B. *Fraud*

In order to establish a claim of fraud under Virginia law, a plaintiff must establish the following elements by clear and convincing evidence: "'(1) a false representation, (2) of a

11

material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by

the party mislead, and (6) resulting damage to the party mislead.'" *Stone Castle Fin., Inc. v.*

*Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 662 (E.D. Va. 2002) (quoting *Hitachi*

*Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999)).  Punitive damages may also

be appropriate under common law fraud claims "where there is misconduct or malice, or such

recklessness or negligence as evinces a conscious disregard of the rights of others . . . or on a

showing of willful or wanton conduct which evinces a conscious disregard of the rights of

others." *Diaz Vicente*, 736 F. Supp. 679, 695 (E.D. Va. 1990) (quoting *Baker v. Marcus*, 114

S.E.2d 617, 621 (Va. 1960); *Booth v. Robertson*, 374 S.E.2d 1, 2 (Va. 1988)) (internal citations

and quotations omitted).

  Based on the foregoing, plaintiffs have successfully pled a claim for common law fraud

under Virginia law.  Specifically, defendants falsely represented their ability to improve Mr.

Arriola's credit score and obtain the requested loan modification.  Defendants'

misrepresentations with respect to these services involved an overarching material fact; namely,

that loan modification was both possible and likely to succeed under the proposed plan.  These

misrepresentations were also made intentionally and knowingly, given that defendants never

attempted to improve Mr. Arriola's credit score.  Other misrepresentations within the mortgage

modification scheme itself were also intentional, such as defendants' request for Ms. Arriola's

debt card number "to ensure that the modification process ran smoothly."  (Compl. ¶ 32).  The

purpose behind these requests was to mislead plaintiffs into transferring certain payments to the

defendants, which plaintiffs believed were necessary prerequisites for the loan modification.

However, instead of forwarding those payments to plaintiffs' loan servicing company,

defendants purposefully withheld the payments and converted those funds for their own personal

use while assuring plaintiffs their loan modification continued to proceed as planned. Plaintiffs relied on these misrepresentations to their detriment, unaware of the missed payments, defaulting loan account, and impending foreclosure proceedings.

### C. *Damages*

Both the amended complaint and plaintiffs' proposed finding of fact and conclusions of law offer little guidance with respect to calculating an appropriate amount of damages based on the alleged harm. Aside from the $500.00 paid for credit repair services and the $2,141.95 monthly payments transferred from Ms. Arriola's bank account beginning in September 2012 and continuing through May 2013, plaintiffs make only vague efforts to quantify the damages suffered. (Compl. ¶ 74) (listing actual damages as including, but not limited to: "loss of their home, credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress").

Under the CROA plaintiffs are entitled to recover actual damages or the amount paid to the credit repair organization, whichever is greater. As discussed above, plaintiffs are also entitled to an award of punitive damages and attorney's fees and costs under the CROA. In making a determination as to the appropriate amount of damages under the CROA, one must look to the alleged violations of CROA and what damages resulted from those violations. In this case Ms. Arriola paid the defendants $500.00 to perform credit repair services for Mr. Arriola. As such, the court finds that it is appropriate to award Ms. Arriola $500.00 for the amounts paid to the defendants for the credit repair services. Since Mr. Arriola had anticipated obtaining better credit based on the representations of the defendants and defendants failed to deliver, his claims for credit damage, damage to reputation, embarrassment, humiliation, and other emotional distress have merit. However, Mr. Arriola has failed to provide any specific claim for

damages related solely to a violation of the CROA. As set forth in the pleadings and his declaration, the main element of plaintiffs' damages relates to the foreclosure and having to move into separate apartments. While there is insufficient evidence to tie those damages directly to a violation of the CROA, there is sufficient evidence to support an award of $1,000.00 for Mr. Arriola's emotional distress in not obtaining the assistance in repairing his credit that he was promised by the defendants.

As discussed above, plaintiffs are also entitled to an award of punitive damages and attorney's fees and costs under the CROA. Given the egregious nature of the violation, the court finds that a doubling of the award of actual damages is appropriate. The court also finds that each plaintiff is entitled to an award of half of the attorney's fees and costs incurred by counsel. Accordingly, under Count Two for a violation of the CROA, Ms. Arriola is entitled to $500.00 in actual damages, $500.00 in punitive damages, and $5,693.95 in attorney's fees and costs and Mr. Arriola is entitled to an award of $1,000.00 in actual damages, $1,000.00 in punitive damages, and $5,693.94 in attorney's fees and costs.

Under the fraud claim the damages sustained by the plaintiffs are substantially more. First, the court finds it appropriate to award Ms. Arriola an amount equal to the nine monthly payments fraudulently transferred from her bank account. That loss is directly attributable to the defendants' fraud and Ms. Arriola is entitled to recover $19,277.55 along with other damages related to the loss of her home, credit damage, damage to reputation, embarrassment, humiliation and other emotion and mental distress. However, with only limited evidence concerning the severity and extent of these damages, the court is left to its own devices in determining the appropriate amount of compensation under the circumstances. The declaration submitted by Jeffrey Arriola in support of plaintiffs' motion for default judgment provides, in part:

> Aside from anger, frustration, and stress, I have also lost a lot of sleep because I can't get my mind off these problems and I live in fear that problems with the fraud will continue to occur. My mother has also suffered similar distress, anxiety and humiliation. She worked so hard to provide this home and now we live in separate apartments.

(Docket no. 77-2). Based on the foregoing the court finds it appropriate to award each of the plaintiffs $50,000.00 in damages for the loss of their home, credit damage, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.[5] Accordingly the court will award $69,277.55 in actual damages to plaintiff Olimpia Arriola and $50,000 in actual damages to plaintiff Jeffrey Arriola to be assessed against both defendants, joint and severally. *See Cox v. Collins*, 4 F.3d 394, 394–95 (4th Cir. 1993) (discussing a jury award under a claim of common law fraud that included actual damages of $30,000, emotion distress damages of $2,400, and punitive damages of $1,000).

The court also finds an award of punitive damages under the fraud claim to be appropriate under the circumstances, given that "both defendants participated in fraudulently obtaining and then squandering plaintiffs' money, thereby evincing a total disregard of plaintiffs' rights." *Diaz Vicente*, 736 F. Supp. at 696. Moreover, defendants' conduct was both willful and deliberate. While there is no fixed standard the court must adhere to when calculating an award of punitive damages, "[t]he amount of punitive damages awarded should bear some reasonable relationship to the actual damages sustained and to the measure of punishment required." *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 747 (Va. 1985). Taking that guidance into consideration and with the recognition that the conduct of Pardo and Medina was willful and deliberate, the court finds that an award of punitive damages that mirrors the award of actual damages is appropriate under the circumstances.

---

[5] Plaintiffs have not shown how much, if any, equity they lost in the foreclosure sale or what actual changes that foreclosure had on their credit or reputation.

15

## VI. CONCLUSION

For the reasons stated above and based on the facts established by the amended complaint and plaintiffs' proposed finding of fact and conclusions of law, plaintiffs' motion for default judgment (Docket no. 76) is granted. As discussed above, Olimpia Arriola is entitled to a judgment against Rodrigo Pardo and Lorena Medina, jointly and severally, in the total amount of $145,249.05. This amount includes an award of $500.00 in actual damages and $500.00 in punitive damages under the CROA, $69,277.55 in compensatory damages under the fraud count, $69,277.55 in punitive damages under the fraud count, and $5,693.95 in attorney's fees and costs. Jeffrey Arriola is entitled to a judgment against Rodrigo Pardo and Lorena Medina, jointly and severally, in the total amount of $107,693.94. This amount includes an award of $1,000.00 in compensatory damages and $1,000.00 in punitive damages under the CROA, $50,000.00 in compensatory damages under the fraud count, $50,000.00 in punitive damages under the fraud count, and $5,693.94 in attorney's fees and costs.

An appropriate Order shall issue.

Entered this 26th day of May, 2015.

_____/s/_____
John F. Anderson
United States Magistrate Judge
    John F. Anderson
    United States Magistrate Judge

Alexandria, Virginia

16